| | | | |
|---|---|---|---|
| Case No. | CV 18-8573-DMG (AFMx) | Date | January 4, 2019 |
| Title | *Edward A. Golda v. Residence Inn By Marriott, LLC, et al.* | Page | 1 of 5 |

Present: The Honorable   DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs | Attorneys Present for Defendants |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS - ORDER RE PLAINTIFF'S MOTION TO REMAND [15]**

This matter is before the Court on Plaintiff's Motion to Remand. [Doc. # 15 ("Motion").] For the reasons set forth below, the Court **GRANTS** Plaintiff's Motion.

**I.**
**FACTUAL AND PROCEDURAL BACKGROUND**

On June 1, 2016, Plaintiff Edward Golda filed a Complaint in Los Angeles County Superior Court against Defendants Residence Inn by Marriott, LLC, Marriott International, Inc., Springhill SMC, LLC, and Maritza Mejia ("Mejia"). [Doc. # 1, Ex. 1 ("Complaint").] The Complaint alleges causes of action for: (1) wrongful termination in violation of public policy and California Labor Code ("CLC") section 1102.5; (2) interference with Plaintiff's rights under the California Family Rights Act ("CFRA"); (3) failure to authorize or permit sick leave; (4) failure to pay minimum wage; (5) failure to authorize or permit meal breaks; (6) failure to authorize or permit rest breaks; (7) failure to furnish accurate and itemized wage statements; (8) failure to pay wages upon separation of employment; (9) unfair employment acts and practices; and (10) intentional infliction of emotional distress ("IIED").

The Complaint alleges that Plaintiff is a "resident of this judicial district" and that Residence Inn by Marriott, LLC, Marriott International, Inc., and Springhill SMC, LLC are incorporated in Delaware and have a principal place of business in Maryland. Compl. at ¶¶ 1-4. Plaintiff also alleges that Mejia resides in California. *Id*. at ¶ 5.

Around January 18, 2016, Springhill hired Plaintiff to work as an engineer. On June 18, 2016, Plaintiff was transferred to work as Chief Engineer at the Residence Inn where Mejia was the general manager. *Id*. at ¶ 14. There, Plaintiff alleges that his meal breaks were frequently interrupted and Defendants "rounded down Mr. Golda's work hours, which resulted in wage theft." *Id*. at ¶ 15. Around April or early May 2017, Plaintiff notified Defendants that his father, who suffered from Parkinson's disease, was having brain surgery on May 24, 2017. *Id*. at ¶ 19. As a

UNITED STATES DISTRICT COURT     JS-6 / REMAND
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-8573-DMG (AFMx) | Date | January 4, 2019 |
|---|---|---|---|
| Title | *Edward A. Golda v. Residence Inn By Marriott, LLC, et al.* | Page | 2 of 5 |

result, Plaintiff "exercised his right . . . to take job protected leave to be with and care for" his father beginning on May 24, 2017. *Id.*

In April 2017, Defendants reduced the number of employees in Plaintiff's department. Despite this "understaffing," Plaintiff's amount of responsibility for "maintaining and repairing the Residence Inn's premises" remained the same. *Id.* at ¶ 20. This "understaffing" allegedly led to "maintenance problems." *Id.* Specifically, Plaintiff notified Defendants that the chlorine levels of the hotel's saltwater pool "would sometimes fall below the local minimum requirement." *Id.* at ¶ 21. On May 23, 2017, the City of Pasadena's Department of Public Health audited Residence Inn's pool and found impermissible chlorine levels. As a result, Plaintiff implemented a "corrective action plan" to be carried out while he was on leave. *Id.* at ¶ 22. Upon learning of the pool's closure, however, Mejia told Plaintiff that "I know your father is having brain surgery tomorrow, but it is my expectation that you will be here tomorrow to address [the swimming pool closure] with the Health Department." *Id.* at ¶ 24. According to Plaintiff, Mejia "made clear that Mr. Golda would be fired if he exercised his legal right to be with and care for his elderly and ailing father pre- and post-surgery . . . ." *Id.* From that point on, Plaintiff claims that he suffered severe emotional distress and anxiety. *Id.* at ¶ 25. Plaintiff further alleges that he was "retaliated against and constructively terminated . . . because Defendants forced him to resign." *Id.* at ¶ 26.

After Plaintiff filed suit, Defendants removed the case to this Court under the theory that Mejia "was fraudulently joined to defeat diversity jurisdiction . . . ." [Doc. # 1 ("Notice of Removal") at ¶ 17.] Defendants assert that the Court should ignore Mejia's citizenship because "as a matter of law, Plaintiff cannot state a claim against Mejia for any of the 10 causes of action." *Id.* at ¶ 18.

On November 5, 2018, Plaintiff filed the instant motion, arguing that there is no factual support for Defendants' claim that Mejia is a sham defendant and that the Court must first "determine[] the parties are completely diverse" before evaluating liability." Motion at 6. The Motion has since been fully briefed. [Doc. ## 19, 20.]

## II.
## LEGAL STANDARD

Diversity jurisdiction under 28 U.S.C. § 1332 requires that the parties to a suit be of diverse citizenship. *Diaz v. Davis (In re Digimarc Corp. Derivative Litig.)*, 549 F.3d 1223, 1234 (9th Cir. 2008) (citing *Strawbridge v. Curtiss*, 7 U.S. 267, 267 (1806)) ("Diversity jurisdiction requires complete diversity between the parties—each defendant must be a citizen of a different state from each plaintiff."). There is a "strong presumption against removal jurisdiction," and courts must reject it "if there is any doubt as to the right of removal in the first instance." *Geographic*

UNITED STATES DISTRICT COURT  JS-6 / REMAND
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-8573-DMG (AFMx) | Date | January 4, 2019 |
|---|---|---|---|
| Title | *Edward A. Golda v. Residence Inn By Marriott, LLC, et al.* | Page | 3 of 5 |

*Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1107 (9th Cir. 2010) (quoting *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (*per curiam*)) (internal quotation marks omitted). Any "doubt is resolved against removability." *Luther v. Countrywide Home Loans Servicing LP*, 533 F.3d 1031, 1034 (9th Cir. 2008) (internal citations omitted). The party "seeking removal has the burden to establish that removal is proper" and the "burden of establishing federal subject matter jurisdiction." *Id.*; *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 944 (9th Cir. 2009) (citing *Toumajian v. Frailey*, 135 F.3d 648, 652 (9th Cir. 1998)).

Still, fraudulently joined defendants do not defeat removal on diversity grounds. *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998). A non-diverse defendant is fraudulently joined, "and the defendant's presence in the lawsuit is ignored for purposes of determining diversity, '[i]f the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state.'" *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) (quoting *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987)).

When considering whether removal is proper, the court must generally look only to the Complaint's allegations. *See Ritchey*, 139 F.3d at 1318 (To determine whether joinder of a defendant is fraudulent, district courts must "look only to a plaintiff's pleadings to determine removability" and "will determine the 'existence of federal jurisdiction . . . solely by an examination of the plaintiff's case.") (citations omitted). A defendant opposing remand, however, may introduce evidence beyond the pleadings to establish fraudulent joinder. *Id.* (citing *McCabe*, 811 F.2d at 1339). A defendant opposing remand must "show that there is no possibility that the plaintiff could prevail on any cause of action it brought against the non-diverse defendant. Remand must be granted unless the defendant shows that the plaintiff would not be afforded leave to amend his complaint to cure the purported deficiency." *Padilla v. AT&T Corp.*, 697 F. Supp. 2d 1156, 1159 (C.D. Cal. 2009) (internal citations omitted); *Rangel v. Bridgestone Retail Operations, LLC*, 200 F. Supp. 3d 1024, 1033 (C.D. Cal. 2016) (same).

## III.
## DISCUSSION

Defendants argue that Mejia's joinder is fraudulent because: (1) Plaintiff's first and second causes of action against Mejia fail as a matter of law, (2) his third through ninth causes of action—all wage and hour claims—cannot apply to Mejia because she was not Plaintiff's employer or a "managing agent" of his employer, and (4) Plaintiff's IIED claim is preempted by California's Workers' Compensation Act ("WCA") and precluded by the managerial privilege doctrine. Plaintiff's current Complaint may be insufficient to state a claim against Mejia. But because Plaintiff could possibly amend the Complaint to allege an IIED claim against Mejia, remand is

UNITED STATES DISTRICT COURT     JS-6 / REMAND
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-8573-DMG (AFMx) | Date | January 4, 2019 |
|---|---|---|---|
| Title | *Edward A. Golda v. Residence Inn By Marriott, LLC, et al.* | Page | 4 of 5 |

appropriate. In light of that conclusion, the Court need not address Defendants' first, second, or third arguments.

### A. Plaintiff Could Amend His Complaint to State an IIED Claim Against Mejia

Defendants argue that Plaintiff cannot possibly state a claim for IIED against Mejia because WCA preemption and the managerial privilege doctrine protect her.

#### 1. The WCA Does Not Bar All IIED Claims

The WCA provides that it shall be the exclusive remedy for claims of IIED based on actions taken within the context of the employment relationship. Cal. Lab. Code § 3602; *Carlos v. Old Dominion Freight Line, Inc.*, 726 F. App'x 576, 579 (9th Cir. 2018); *Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal. 3d 148, 233 (1987). Indeed, WCA preempts IIED claims even when an employer's intentional actions within the employment relationship are "calculated to cause severe emotional disturbance." *Gantt v. Sentry Ins.*, 1 Cal. 4th 1083, 1099 (1992), *overruled on other grounds by Green v. Ralee Eng'g Co.*, 19 Cal. 4th 66 (1998).

Yet, "where the plaintiff has contended that the employer's conduct is outside the normal risks of the employment relation, claims for emotional distress are not preempted by the WCA." *Onelum v. Best Buy Stores L.P.*, 948 F. Supp. 2d 1048, 1054 (C.D. Cal. 2013). And actions within "the normal part of the employment relationship" do "not encompass all conduct that occurs on the job." *Id.* (citation omitted). California law permits a separate, non-WCA civil action "if the conduct of the employer has a 'questionable' relationship to the employment or where the employer steps out of his proper role." *Calero v. Unisys Corp.*, 271 F. Supp. 2d 1172, 1180 (N.D. Cal. 2003) (quoting *Cole*, 43 Cal. 3d at 160). For example, there is a "longstanding view that unlawful . . . retaliation in violation of FEHA falls outside the compensation bargain and therefore claims of intentional infliction of emotional distress based on such . . . retaliation are not subject to workers' compensation exclusivity." *Light v. Dept. of Parks & Recreation*, 14 Cal. App. 5th 75, 101 (2017).

Plaintiff does not explicitly tie his IIED claim to retaliation in violation of FEHA or the California Family Rights Act, but he does allege that his emotional distress arose in part from his termination, Compl. at ¶ 92, and that he was "retaliated against and constructively terminated in violation of California law." Compl. at ¶ 26. If pled more carefully in a subsequent amended

UNITED STATES DISTRICT COURT  JS-6 / REMAND
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-8573-DMG (AFMx) | Date | January 4, 2019 |
|---|---|---|---|
| Title | *Edward A. Golda v. Residence Inn By Marriott, LLC, et al.* | Page | 5 of 5 |

complaint, these theories could possibly support a cause of action for IIED that falls outside the normal employment relationship, and therefore outside of WCA preemption.[1]

### 2. Managerial Activity Can Constitute Extreme and Outrageous Conduct

Defendants also argue that "[e]ven if Plaintiff's IIED claim against Mejia is not barred by the WCA, this claim would still fail because his Complaint and Motion allege conduct (i.e. termination) by Mejia that is a normal part of the work environment and not actionable under IIED" due to managerial privilege. Opp. at 6-7.

As is the case in the WCA preemption context, however, a manager's actions going beyond normal personnel management decisions can give rise to IIED claims. *Corona v. Quad Graphics Printing Corp.*, 218 F. Supp. 3d 1068, 1074 (C.D. Cal. 2016). "Terminating an employee is not alone sufficient to satisfy the standard for extreme and outrageous conduct," but "[w]here behavior goes beyond the act of termination . . . it is for the court to determine whether on the evidence severe emotional distress can be found." *Onelum*, 948 F. Supp. 2d at 1053. And as discussed above, Plaintiff would likely be given the chance to amend the Complaint to more plainly allege that he was terminated in retaliation for his decision to take leave to care for his ailing father. *See* Compl. ¶¶ 26, 90, 91, 92. Those retaliation allegations potentially would bring Mejia's actions outside the normal course of employment. *See Light*, 14 Cal. App. 5th at 102.

Therefore, based on Plaintiff's allegations, the Court cannot conclude there is "no possibility that the plaintiff could prevail on any cause of action." *Padilla*, 697 F. Supp. 2d at 1159. Given that courts must presume against removal, resolve all doubts against removability, and remand "unless the defendant shows that the plaintiff would not be afforded leave to amend his complaint to cure the purported deficiency," remand is appropriate here.

### IV.
### CONCLUSION

In light of the foregoing, the Court **GRANTS** Plaintiff's Motion to Remand. The case is hereby **REMANDED** to Los Angeles County Superior Court.

**IT IS SO ORDERED.**

---

[1] The Court does not make any conclusion as to the merits of whether Plaintiff's termination constituted actionable termination or IIED. It addresses FEHA retaliation only to note that the potential for a retaliation theory indicates that the Plaintiff would likely be "afforded leave to amend his complaint to cure" the IIED claim's present deficiencies. *Padilla*, 697 F. Supp. 2d at 1159.